UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARREN BAILEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 3:20-cv-474-GCS |
| ) | |
| **GOVERNOR JAY ROBERT** ) | |
| **PRITZKER,** *in his official capacity*, ) | |
| ) | |
| **Defendant.** ) | |

**ORDER REMANDING ACTION PURSUANT TO 28 U.S.C. § 1447**

**SISON, Magistrate Judge:**

Plaintiff Darren Bailey filed suit in the Circuit Court for the Fourth Judicial Circuit, Clay County, Illinois, in case number 2020-CH-6 on April 23, 2020. On May 13, 2020, he filed a first amended verified complaint for declaratory judgment and injunctive relief. In his amended complaint, Bailey, a representative in the Illinois General Assembly suing solely in his personal capacity as a citizen of Illinois, alleges that, by issuing continuing disaster proclamations and executive orders more commonly known as "stay-home" orders, Governor J.B. Pritzker exceeded his authority to exercise certain emergency powers granted to him under the Illinois Emergency Management Agency Act, 20 ILCS § 3305, *et seq.* Governor Pritzker timely removed the action to this Court on May 21, 2020, invoking federal jurisdiction under 28 U.S.C. § 1343(a)(3). Bailey immediately filed an emergency motion to remand (Doc. 7). The Court set an expedited briefing schedule, and the matter is now fully briefed and ripe for ruling.

## ANALYSIS

"Defendants may remove a 'civil action' from state court to the federal district court located in the place where such action is pending, as long as the federal district court had 'original jurisdiction' over the case." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 968 (7th Cir. 2013)(quoting 28 U.S.C. § 1441(a)). Governor Pritzker, as the party seeking removal, bears the burden of establishing that federal jurisdiction exists. *See Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). There is a strong presumption in favor of remand, and district courts must narrowly interpret removal statutes. *Id.* Doubts over jurisdiction should be resolved in favor of remand. *Id.*

The Court is guided by the principle that federal courts are courts of limited jurisdiction, a function of the restrictions placed upon the federal judiciary both by the United States Constitution and by federal law. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). It is a fundamental principle of federalism that federal courts may hear only certain claims, such as those raising "federal questions" or "arising under" the laws of the United States. U.S. CONST. art. III § 2, cl. 1. While "[t]his constitutional grant of judicial authority is broad[,] . . . the Constitution gives Congress the power to further refine the actual scope of federal jurisdiction." *International Union of Operating Engineers, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 280 (7th Cir. 2009)(citing references and internal citations omitted). "Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution," but it may impose statutory limitations. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 491 (1983).

A defendant may not remove a case to federal court unless, at the time of removal,

a plaintiff's complaint establishes that there is federal jurisdiction. *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 10 (1983). Thus, the Court begins by considering the claims alleged in Bailey's first amended complaint. Statements made or claims advanced prior to the filing of the first amended complaint, the operative complaint at the time of removal, bear no impact on whether federal jurisdiction existed at the time of removal.

In his first amended complaint, Bailey brings two types of claims: claims for declaratory relief and a claim for injunctive relief. He alleges that Governor Pritzker first declared the COVID-19 pandemic a disaster on March 9, 2020. The declaration, made pursuant to the Illinois Emergency Management Agency Act ("IEMAA"), labeled all 102 counties in Illinois disaster areas, and, pursuant to emergency powers granted to him under Illinois law, Governor Pritzker issued executive orders aimed at decreasing the spread of and reducing the loss of life caused by COVID-19, a severe, acute respiratory disease, caused by the novel SARS-CoV-2 virus.

According to Bailey's amended complaint, Governor Pritzker overstepped his authority by failing to adhere to a 30-day time limit on his authority to exercise emergency powers under the IEMAA. At the time the amended complaint was filed, Bailey alleged that Governor Pritzker twice extended his initial disaster proclamation, first on April 1, 2020, and again on April 30, 2020, finding both times that the pandemic was a continuing disaster. By mid-May, Bailey claims that the Governor had been relying on his emergency powers for 81 days and that, in addition to exceeding the IEMAA temporal limit, the exercise of powers usurped the delegation of authority by the Illinois

Department of Public Health to local health departments to order disease-related restrictions like isolation and quarantines pursuant to rules promulgated under the Illinois Department of Public Health Act, 20 ILCS § 2305, *et seq.* ("IDPHA").

Bailey seeks a declaratory judgment finding that the April 30, 2020 proclamation is void because, among other arguments, the IEMAA only grants Governor Pritzker the power to avert a public health emergency, not to manage it once it has occurred (Count I). He also seeks a declaratory judgment stating that Governor Pritzker had no authority to exercise his emergency powers under the IEMAA after April 8, 2020, the date when the 30 day-period from the initial March 9, 2020 disaster proclamation ended (Count II). Bailey further requests that a declaratory judgment be entered holding that the Illinois General Assembly, through the IDPHA, gave supreme authority over the restriction of citizens' movements and business activity to the Department of Public Health when a public health risk exists, that is, that the IDPHA alone governs when and how isolation and quarantine rules may be issued and enforced in Illinois (Count III). Finally, Bailey seeks injunctive relief preventing the Governor from issuing disaster proclamations that do not comply with the IEMAA's 30-day time limit and enjoining him from restricting movement, activities, or business operations under the IEMAA (Count IV).

As an initial note, this case does not take place in a vacuum. While the analysis must be dispassionate, the Court recognizes the enormity of the issues raised by Bailey. The Court is focused solely on the question of federal jurisdiction without consideration of the merits of Bailey's claims, but the undersigned is cognizant that these are uncharted, turbulent times. The stakes are high on both sides of this litigation. There is no easy

balance between protecting the public from a silent, fast-spreading, novel virus and preventing great social upheaval and the heavy strain of economic and financial uncertainty. This District's normal operations have been disrupted due to similar, albeit separate, balancing concerns. Nevertheless, the Court must set all such concerns aside in weighing the question before it now. This is a routine function of the federal judiciary and one which the Court addresses daily, *i.e.*, whether a complaint pleads a basis for federal jurisdiction. That issue alone is before the Court. In this instance, in the interest of federalism, the Court finds that the amended complaint does not give rise to federal jurisdiction and that this action is best committed to the courts of the State of Illinois for further consideration.

Bailey argues that his complaint clearly raises no federal issues and vehemently attacks the Governor's decision to remove this action as frivolous and taken in bad faith. While it may appear at first blush that no claim is raised under the United States Constitution or federal law, the question of whether federal jurisdiction exists presents a close call. The amended complaint does not clearly state a statutory or constitutional basis for each claim, which required the Court to expend significant time to properly categorize each claim.

To a certain degree, the amended complaint could be read as raising constitutional claims. In his reply, Bailey argues that his allegations are straightforward: "(a) Defendant issued certain proclamations, executive orders, and declarations; (b) the proclamations, executive orders, and declarations *had the effect of restricting Plaintiff's ability to travel, associate with others, and practice his faith*; and (c) Defendant had no statutory authority to

do so." (Doc. 25, p. 4) (emphasis added). The highlighted language demonstrates to the Court that even Bailey acknowledges that at the core of his claims is an allegation that his constitutional rights were violated by state action allegedly taken in violation of state law. However, the amended complaint does not single out Bailey's rights under the Illinois Constitution. Instead, it just refers to various rights understood to be secured by constitutional grants, both state and federal.

To determine whether a complaint raises a federal issue, courts rely on the "well-pleaded complaint" rule. That is, a plaintiff is the master of his complaint and, as such, "may include (or omit) claims or parties in order to determine the forum." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000)(citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). *See also Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000)(noting that a plaintiff may "avoid federal jurisdiction by pleading only state law claims[.]"). As the Supreme Court has stated, "the paramount policies embodied in the well-pleaded complaint rule . . . [are] that the plaintiff is the master of the complaint . . . and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 398-399. To that end, it is not uncommon for a party to plead claims alleging violations solely of rights guaranteed by a state's constitution in order to avoid federal jurisdiction. But that clarity in pleading is missing here, as the amended complaint references constitutional rights vaguely and in passing.

The references to constitutional rights include rights that are recognized by both the U.S. Constitution and the Illinois Constitution, and the amended complaint could, but

does not, specify that it seeks redress solely for violations of Bailey's rights under the state constitution. The argument that this is a case that clearly raises no federal claims is too confidently stated. There is a federal right to travel secured by the U.S. Constitution, but there also is a federal right to travel secured by the Illinois Constitution. *See, e.g.,* ILCS CONST., Art. 1, § 2 (establishing due process protection and stating that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."). *See also City of Chicago v. Morales*, 687 N.E.2d 53, 64-65 (Ill. 1997)(noting that general right to travel was protected by the due process clause). The First Amendment protects the right to free exercise of religion and the right to assemble, but the Illinois Constitution protects those rights, as well. *See* ILCS CONST., Art. 1, § 3. Even Bailey acknowledges that his allegations are fairly framed as claiming the Governor's alleged overreach restricted his ability to travel, associate with others, and practice his faith. It is a fair reading by Governor Pritzker to conclude that Bailey's claims are couched in constitutional terms and may be constitutional claims.

That said, the Court recognizes that Illinois has an independent declaratory judgment statute that creates a cause of action for challenging statutory or executive overreach. The Illinois declaratory judgment statute states:

> The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute municipal, ordinance, or other governmental regulation.

735 ILCS § 5/2-701(a). To sustain a declaratory judgment action in Illinois, courts require a showing of "(1) a plaintiff with a legal tangible interest; (2) a defendant having an

opposing interest; and (3) an actual controversy between the parties concerning such interests." *Hess v. Miller*, 133 N.E.3d 1235, 1242 (Ill. Ct. App. 2019)(quoting *Beahringer v. Page*, 789 N.E.2d 1216, 1223 (Ill. 2003)). In Illinois, declaratory judgment actions are "purely statutory" and are "to be liberally construed." *Beahringer*, 789 N.E.2d at 373. They also may be brought against a governor seeking declarations that executive orders are unconstitutional or contrary to state law. *See, e.g., Caro v. Whitaker*, 898 N.E.2d 1110, 1113 (noting that without the governor as a defendant, the plaintiff did not allege a declaratory judgment action challenging his authority to act).

Bailey does not cite the declaratory judgment statute in his amended complaint, and the briefs by the parties do not address it. Nevertheless, the Court finds that the most straightforward reading of Bailey's claims is that they are brought pursuant to this Illinois statute and not as constitutional claims. Despite the omission of a statutory reference, Bailey alleges the elements of a claim under the statute, namely that he and Governor Pritzker have opposing interests related to an actual controversy and that a court has the power to make a declaration to resolve, at least in part, the dispute. While rights secured by the U.S. Constitution are impacted by the orders and proclamations at issue, they are not central to any claim for a declaratory statement from the courts on the bounds of Illinois statutory and constitutional grants of authority to a governor under the Illinois declaratory judgment statute. The question remains, then, whether any statutory grant of jurisdiction covers claims like those raised by Bailey for declaratory relief based on a violation of state law by a state actor.

The Constitution's grant of jurisdiction, as narrowed by Congress, is codified in

various statutes including 28 U.S.C. § 1343(a)(3), which Governor Pritzker invokes as the basis for federal jurisdiction here. Bailey, on the other hand, argues that the principles of 28 U.S.C. § 1331 apply.[1] Despite strong arguments to the contrary, the Governor is adamant that the plain language of Section 1343(a)(3) provides the jurisdictional hook for this action. By its plain language, Section 1343(a)(3) states:

> (a)    The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
> . . .
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States [.]

28 U.S.C. § 1343(a)(3). By comparison, pursuant to Section 1331 "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Prior to 1980, Section 1331 had an amount in controversy requirement, but Congress amended the statute and removed the requirement. *See* Pub. L. No. 96-486, 94 Stat. 2369 (1980). In dicta, the Seventh Circuit explained the relationship between claims under Section 1343(a)(3) and claims under Section 1331:

> Section 1343(a)(3) covers only civil rights claims against state actors and has had no legal effect since 1975, when Congress amended § 1331 to eliminate any amount-in-controversy requirement. (The point of § 1343(a)(3) had been to allow civil-rights suits without regard to the amount in controversy. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S. Ct. 1905, 60 L.Ed.2d 508 (1979)).

---

[1]    The United States of America filed a statement of interest pursuant to 28 U.S.C. § 517. (Doc. 15). The Court carefully reviewed the brief in support of Bailey's motion. As the arguments raised by the United States do not differ drastically in substance from those raised by Bailey, the position of the United States will not be addressed separately in this Order.

*Myles v. United States*, 416 F.3d 551, 554 (7th Cir. 2005). While the statement is dicta, it is a clear statement of the law that is relied upon by courts throughout this Circuit as demonstrating that Section 1343 is widely understood to provide federal jurisdiction for civil rights claims, as opposed to creating a jurisdictional grant over claims that are not covered by Section 1331. It also comports with similar decisions about jurisdiction pursuant to Section 1343 in civil rights cases. *See, e.g.*, *Hickey v. Duffy*, 827 F.2d 234, 241 (7th Cir. 1987)(stating that "Section 1983 established a remedy for state officials' violations of law as well as violations of the Constitution, but it did not create an opportunity to litigate these claims in federal court. The jurisdictional provisions of the Civil Rights Act of 1871, now found in § 1343, were limited to claims 'secured by the Constitution.'"); *Roden v. American Federation of State, County, and Mun. Employees, Council 24*, No. 08-2578, 2009 WL 40001 at *2 (7th Cir. Jan. 8, 2009)(citing to *Myles* and stating that Section 1343 "grants jurisdiction to district courts to hear certain civil-rights claims" and provides "overlapping" jurisdiction with § 1331 for "civil-rights claims"); *Savage v. Premier Bank of Jacksonville*, No. 19-CV-3201, 2019 WL 4418528 at *2 (C.D. Ill. Sept. 16, 2019)(citing to *Myles* and stating that "Section 1343(a)(3) 'covers only civil rights claims against state actors'" and further noting the statute has had no effect since Section 1331 was amended to eliminate the amount in controversy requirement.).

The Governor asserts that the opinions of two federal appellate courts and one federal district court support the argument that Section 1343(a)(3) permits a district court to exercise original jurisdiction over causes of actions that assert non-federal claims, so

long as those claims seek to redress the deprivation of rights secured by the Constitution. (Doc. 24, p. 8). This is in contrast to cases removed under Section 1331, which covers only claims that arise under federal law. The Governor's cited authorities, however, do not support such an argument. For example, the Governor references the phrase "any civil action authorized by law" in Section 1343(a)(3). The Governor then relies on *Rodriguez v. Comas*, 888 F.2d 899 (1st Cir. 1989), where the First Circuit stated that jurisdiction under Section 1343(a) was "open-ended – applying to any person and over any civil action." *Id.* at 906. However, the phrase is taken out of context, as the First Circuit merely was comparing the jurisdictional scope of Section 1343(a) with that of Section 1346(b), the latter of which conferred jurisdiction on the district court over certain cases where the United States was named as a defendant. *Id.*

The Governor also relies on *Campbell v. Gadsden v. County Dist. Sch. Bd.*, 534 F.2d 650 (5th Cir. 1976), but such reliance is misplaced. The Fifth Circuit noted that the phrase "civil action authorized by law" in Section 1343(a)(3) means that "jurisdiction is unavailable in the absence of an appropriate cause of action." *Id.* at 655. The Fifth Circuit went on to state that "failure to state a claim under sections 1981, 1983 and 1985 or other appropriate legal authority has the effect of depriving federal courts of subject matter jurisdiction under 1343." *Id.* The Fifth Circuit thus makes clear that the phrase "civil action authorized by law" is not as "open ended" so as to provide for a jurisdictional grant over claims not covered under Section 1331, as the Governor believes it to be. Instead, Section 1343 requires the existence of an appropriate cause of action authorized by federal law, which, consistent with the authorities cited above, are limited to civil

rights claims. *See, e.g., Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618 (1979)(noting that where the underlying statute is not a civil rights statute, Section 1983 needs to be invoked in order to support jurisdiction under Section 1343).

Furthermore, the Governor relies on *Spaulding v. Mingo County Bd. of Educ.*, 897 F. Supp. 284 (S.D. W.Va. 1995) for the proposition that jurisdiction is proper under Section 1343(a)(3) "even where an asserted right or privilege may be concurrently protected by the U.S. Constitution and a state constitutional or statutory provision[.]" (Doc. 24, p. 12). In *Spaulding*, the parents originally brought suit in West Virginia state court alleging violations of the West Virginia Constitution and West Virginia Human Rights Act, as well as other state law claims. The parents alleged that their daughter was discriminated against based on her disability by various educational agencies and their representatives. The matter was removed to federal court and the district court addressed its jurisdiction under Section 1343(a)(3). The court held that it did have jurisdiction, but it did so by relying on the "artful pleading" doctrine which provides that "a plaintiff cannot defeat removal by omitting an essential federal question from the complaint." *Id.* at 288. The court reasoned that the parents essentially pleaded but purposely omitted federal claims under the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act in order to defeat removal. *Id.* Thus, the court concluded that the two federal statutes provided the jurisdictional hook it needed to exercise jurisdiction under Section 1343(a)(3). This permitted the district court to exercise jurisdiction over the other state law claims pursuant to its supplementary jurisdiction. *See* 28 U.S.C. § 1367.

More importantly, despite finding that it had jurisdiction, the court ultimately opted to exercise its discretion and remand the case back to state court. *See Spaulding*, 897 F. Supp. at 289. The court noted that remand was appropriate, even if there were putative federal claims, "where the crux of the action rests in the construction and application of state law[.]" *Id.* The court relied on factors such as whether the majority of claims were grounded in state law, whether the federal constitutional claims were closely related to state constitutional claims, and whether the federal law claims were tied to the state law claims. *Id.* (internal quotations and citations omitted). Accordingly, the court remanded the case reasoning that the state claims predominated over any putative federal claim, the claims raised complex issues of state law, the state courts had concurrent jurisdiction over the putative federal claims, and there was a need to respect the parents' original choice of forum. *Id.*

Here, even if the Court found that jurisdiction was proper under Section 1343(a)(3), which it does not, the same considerations for remand in *Spaulding* would likewise apply to the instant case. Clearly, the crux of the instant dispute is the scope of the Governor's power under the statutory scheme established by the Illinois legislature. And, although federal constitutional rights may be impacted, it is ultimately incidental to the issue of whether the Governor exceeded those powers, which is a matter governed solely by state law. Furthermore, to the extent that Bailey is asserting the violation of his federal constitutional rights, those same rights are protected by the Illinois Constitution, and thus, such claims are closely related. Finally, in the absence of any purported federal claim predominating this case, Bailey's original choice of forum should be respected.

In any event, despite *Spaulding*'s construction of Section 1343(a)(3), it is not binding on this Court. Rather, the Court chooses to follow the interpretation of Section 1343(a)(3) as provided for by the Seventh Circuit in dicta in *Myles* and as described above. That dicta states that Section 1343(a)(3) has had no legal effect since 1975, which is when Congress eliminated the amount-in-controversy requirement from Section 1331. *See Myles*, 416 F.3d at 554.

The Governor responds to *Myles* by noting that to follow it would result in the implicit repeal of Section 1343, which is disfavored in the law. However, this is not to say that Section 1343 has been repealed, by implication or otherwise. Rather, it is redundant now that Section 1331 confers jurisdiction without respect to the amount in controversy, negating the need for "many of the specific grants of jurisdiction." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 267, 267 n.5 (5th Ed. 2007)(stating that "[f]or example, 28 U.S.C. § 1343 creates subject matter jurisdiction for civil rights cases. The jurisdictional provision was important because of the difficulty of ascertaining the monetary value of civil rights and liberties. However, the elimination of the amount in controversy requirement in § 1331 made § 1343 superfluous"). A broad reading of Bailey's complaint could allow the Court to find he states a claim for redress of a deprivation of a right secured by the Constitution, as discussed above, but the Court finds that the amended complaint stops just short of doing so.

Further, if the broader jurisdictional grant of Section 1331 does not reach Bailey's claims, then the narrower reach of Section 1343 ought not confer federal jurisdiction either. Governor Pritzker raises a number of other arguments as to why Section 1343(a)(3)

confers jurisdiction, but the Court declines to address each one individually because it is clear that it would be judicial overreach to read Bailey's claims as federal civil rights claims subject to Section 1343's jurisdictional grant. To so find would expand federal jurisdiction to cover claims against state actors for violating state laws in the absence of a clearly-pleaded claim that the state action violated or implicated the United States Constitution or an Act of Congress. As such, this case shall be remanded to state court for adjudication.

### REQUEST FOR JUST COSTS AND EXPENSES

In his emergency motion to remand, Bailey asks the Court to order the Governor to pay his reasonable fees and costs incurred during the period of time this action was pending in this court. Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as the result of the removal." The Seventh Circuit has made clear that Section 1447(c) "is *not* a sanctions rule; it is a fee-shifting statute, entitling the district court to make whole the victorious party." *Garbie v. DaimlerChrysler, Corp.*, 211 F.3d 407, 410 (7th Cir. 2000)(emphasis in original). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Seventh Circuit directs courts to consider whether, "at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal," likening the analysis to one made under the qualified immunity doctrine. *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007).

Bailey vigorously argues that Governor Pritzker's decision to remove this case was frivolous and in bad faith, but the Court disagrees. The removal was timely. The face of the complaint arguably seeks to vindicate constitutional rights, like the right to travel and the right to free exercise of religion, without specifying that it refers only to rights secured by the Illinois Constitution. The Court seriously considered whether Bailey unintentionally pleaded himself into federal jurisdiction by raising a claim under the United States Constitution with this lack of specificity, and the decision in his favor was a close call. As such, the Court does not find that Governor Pritzker lacked an objectively reasonable basis for seeking removal. Thus, the Court will not award any fees under Section 1447(c).

## Conclusion

For the above-stated reasons, Plaintiff's emergency motion to remand (Doc. 7) is **GRANTED**. It is hereby **ORDERED** that, pursuant to 28 U.S.C. § 1447(c), this action be **REMANDED** to the Circuit Court for the Fourth Judicial Circuit, Clay County, Illinois. No fees or costs are awarded. The Clerk of Court is **DIRECTED** to transmit a certified copy of this Order to the clerk of the state court, and thereafter to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: June 29, 2020.

Digitally signed by Judge Sison
Date: 2020.06.29 16:57:45 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge